OPINION OF THE COURT
Bertram R. Gelfand, J.
On the settlement of the decree, in this matter an issue is presented as to whether costs should be fixed solely against the unsuccessful principals or also against their attorneys in fact, who also acted as counsel in the matter. The proceeding was one seeking to withdraw funds deposited for the benefit of unknown distributees pursuant to a 1953 decree. After trial, the petition was dismissed (see Matter of Pausner, NYLJ, June 18, 1979, p 15, col 3).
The Public Administrator, the Attorney-General and the guardian ad litem for unknowns have each submitted a bill of costs requesting the sum of $400, the maximum permissible amount pursuant to SCPA 2302 (subd 2). They also contend that the alleged distributees and their attorneys in fact should be jointly and severally liable for the costs. The attorneys in fact oppose the imposition of costs against them. They contend that costs should be limited to being imposed upon their principals.
Although attorneys in fact and attorneys at law have different authority, they are both agents of their principals (see General Obligations Law, §§ 5-1501 5-1601; 2 NY Jur 2d, Agency, § 61). As a general rule an agent is not liable to a third person merely because his principal is liable, provided that the agency has been disclosed to the third party (see 3 NY Jur 2d, Agency, § 276).. However, an agent may not use the agency relationship to shield himself from liability to a third party for a wrongful act he has personally committed, even though his principal may have directed him to perform the act (3 NY Jur 2d, Agency, § 286).
With regard to costs in litigation, a fiduciary is not personally liable for costs awarded against him as a fiduciary unless he has been guilty of mismanagement or bad faith in the prosecution or defense of the action (CPLR 8110). Similarly, an attorney at law is not usually personally charged with any costs awarded during the course of litigation, but he may be personally charged if his negligence, rather than the negligence of his client, led to the inconvenience of the other party, or where there is palpable bad faith or fraud on the part of the attorney (Collado v Quinones, 52 AD2d 534, 535, citing *654 Ferrari v Johnson & Johnson, 42 AD2d 940 and Quinn v Cohn, 37 AD2d 927; Kahn v Stamp, 52 AD2d 748, 749, citing Moran v Rynar, 39 AD2d 718; see, also, 4B Warren’s Heaton on Surrogates’ Courts [6th ed], § 433, par 5).
In the instant matter, this court not only dismissed the petition but found that the claim was based upon recently concocted and tailored fabricated records. These records when viewed in isolated splendor might tend to support the conclusion that the decedent, who died in 1949, was the illegitimate son of the claimants’ paternal grandmother. However, examination of the papers contained in the court’s records which were filed in the proceedings which resulted in the entry of the 1953 decree would make it poignantly clear that the contentions contained in these documents were divorced from fact. The information that has been in the court’s file for over a quarter of a century reflects that decedent was of a different religion than the claimants’ family, that he had more siblings than claimant testified about in the instant proceeding, and that contrary to petitioners’ proof, he had an identifiable father. Additionally, the file shows that the decedent had sent funds to those siblings and to his father in Russia prior to World War II, but thereafter had no knowledge of the whereabouts of his immediate family. It is noted that the attorneys in fact are highly experienced and have a recognized reputation as experts in the trial of issues requiring the establishment of the pedigree of a decedent.
The court is constrained to conclude that the prosecution of this matter by the attorneys in fact, both in their posture as attorneys in fact and attorneys in law, falls outside of the broad ambits of the good faith pursuit of a legitimate claim. An examination of the relatively modest-sized court file would have indicated that the claim of the principals in this matter was not only frivolous, but if successful, would have been a fraud upon the court and upon the litigants. The failure to make such an examination before imposing the burdens of litigation upon the other necessary parties is no less an omission then to have made such an examination and to have disregarded its implications. Under these circumstances, weight must also be given to the fact that one of the principals resides in the State of Florida and the other principal in Poland. For all practical purposes the imposition of a bill of costs solely against such parties would be devoid of any practical impact. Accordingly, giving due consideration to all *655 of the circumstances here present, it is concluded that the attorneys in fact are jointly and severally liable with their principals for the costs awarded herein.
Nevertheless, considering that the amount of money at issue in this litigation was relatively modest, and that there are multiple parties who are each entitled to costs, the court will exercise its discretion to award to each successful party costs in an amount less than the maximum permissible under SCPA 2302 (subd 2) (Matter of Rothko, 95 Misc 2d 492, 495, citing cf. Rowe v Granger, 118 App Div 459; Hayman v Morris, 179 Misc 265). Costs for each successful party are fixed in the sum of $250, payable jointly and severally by the attorneys in fact and/or their principals.